# 16-2173

## In the United States Court of Appeals for the Second Circuit

SPV OSUS LTD.,

*Plaintiff-Appellant*,

v.

UBS AG, UBS (LUXEMBOURG) S.A., UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., AIA LLC, ACCESS PARTNERS (SUISSE) S.A., ACCESS MANAGEMENT LUXEMBOURG S.A., ACCESS PARTNERS S.A. (LUXEMBOURG), PATRICK LITTAYE, ACCESS INTERNATIONAL ADVISORS LTD., THEODORE DUMBAULD,

*Defendants-Appellees*,

ACCESS INTERNATIONAL ADVISORS EUROPE LIMITED, CLAUDINE MAGON DE LA VILLEHUCHET, AKA CLAUDINE DE LA VILLEHUCHET, EXECUTRIX, INDIVIDUALLY, PIERRE DELANDMETER,

*Defendants.*

**On Appeal from the United States District Court for the Southern District of New York, Civil Docket Case No. 15-cv-00619-JSR**

**BRIEF OF DEFENDANTS-APPELLEES UBS AG, UBS (LUXEMBOURG) S.A., UBS FUND SERVICES (LUXEMBOURG) S.A., AND UBS THIRD PARTY MANAGEMENT COMPANY S.A.**

*[continued from front cover]*

Marshall R. King
Gabriel Herrmann
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Defendants-Appellees*
*UBS AG, UBS (Luxembourg) S.A., UBS*
*Fund Services (Luxembourg) S.A., and*
*UBS Third Party Management*
*Company S.A.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendants-Appellees UBS AG, UBS (Luxembourg) S.A. ("UBSL"), UBS Fund Services (Luxembourg) S.A. ("UBSFSL"), and UBS Third Party Management Company S.A. ("UBSTPM"), certifies that:

Defendant-Appellee UBS AG is wholly owned by UBS Group AG, a publicly traded corporation. No publicly held corporation holds 10 percent or more of UBS Group AG's stock.

Defendant-Appellee UBSL was merged into and is now known as UBS Europe SE. UBS Europe SE is a private non-governmental party, and UBS Group AG owns, directly or indirectly, 10 percent or more of the stock of UBS Europe SE. No publicly held corporation other than UBS Group AG owns 10 percent or more of UBS Europe SE's stock.

Defendant-Appellee UBSFSL is a private non-governmental party, and UBS Group AG owns, directly or indirectly, 10 percent or more of the stock of UBSFSL. No publicly held corporation other than UBS Group AG owns 10 percent or more of UBSFSL's stock.

Defendant-Appellee UBSTPM is a private non-governmental party, and UBS Group AG owns, directly or indirectly, 10 percent or more of the stock of

UBSTPM.  No publicly held corporation other than UBS Group AG owns 10 percent or more of UBSTPM's stock.

Dated:  New York, New York
January 6, 2017

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Marshall R. King*
Marshall R. King

200 Park Avenue
New York, NY  10166–0193
Telephone:  212.351.4000
Facsimile:   212.351.4035

*Attorney for Defendants-Appellees UBS AG,
UBS (Luxembourg) S.A., UBS Fund Services
(Luxembourg) S.A., and UBS Third Party
Management Company S.A.*

# TABLE OF CONTENTS

Page

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF ISSUES ....................................................................3

STATEMENT OF THE CASE................................................................3

SUMMARY OF THE ARGUMENT ......................................................8

ARGUMENT ......................................................................................10

I.     THE DISTRICT COURT PROPERLY DENIED REMAND. ....................10

     A.    Applicable Legal Standards. ...............................................10

     B.    The UBS Defendants Have A Reasonable Basis Upon Which
           To Assert Contribution Claims. ...........................................12

          1.    The SIPA Bar Date Does Not Preclude "Related To"
                  Jurisdiction. .................................................................15

               a.    The Excusable Neglect Standard Would Control
                      UBS's Application To File A Late Proof Of Claim.......16

               b.    UBS Has A Reasonable Basis For The Allowance
                      Of Its Late-Filed Claims.................................................18

          2.    The Requirement Of Intervening Litigation Does Not
                  Preclude "Related To" Jurisdiction............................................23

     C.    The UBS Defendants Could Recover From The Madoff Estate.........25

          1.    The District Court's Conclusion That The UBS
                  Defendants Could Receive A Distribution Was Not
                  Clearly Erroneous. .................................................................25

           2.    The Estate's Incurrence Of Fees To Defend Against A
                  Potential Contribution Claim Also Supports Jurisdiction. .......28

          3.    The Potential Reduction Of Estate Liabilities Also
                  Supports Jurisdiction.................................................................29

i

**TABLE OF CONTENTS**
(continued)

Page

II.  THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS
     AGAINST UBS FOR LACK OF PERSONAL JURISDICTION. ..............30

     A.   Applicable Legal Standards. ...............................................30

     B.   UBS AG Is Not Subject To General Jurisdiction In The United
          States..................................................................................32

     C.   SPV Failed To Make A *Prima Facie* Showing Of Specific
          Jurisdiction Over Any Of The UBS Defendants................................37

          1.   None Of OSUS's Injuries Arises Out Of The UBS
               Defendants' Limited Contacts With The Forum. ....................37

          2.   SPV Has Failed To Allege That Any Of The UBS
               Defendants Purposefully Availed Themselves Of The
               Forum. ......................................................................45

               a.   SPV Has Not Alleged Any Relevant Contact
                    Between UBS AG And The Forum................................46

               b.   SPV Has Not Alleged Any Relevant Contact
                    Between UBSTPM And The Forum. ............................49

               c.   UBSFSL's Alleged Contacts With The United
                    States Do Not Amount To "Purposeful
                    Availment."................................................................50

               d.   UBSL's Alleged Contacts With The United States
                    Do Not Amount To "Purposeful Availment."...............53

     D.   The District Court's Dismissal Without Jurisdictional
          Discovery Was Not An Abuse Of Discretion. ...................................55

CONCLUSION ....................................................................................57

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
   09-cv-8862(GBD), 2013 WL 1286170 (S.D.N.Y. Mar. 28, 2013) ........38, 43, 44

*Ace Decade Holdings Ltd. v. UBS AG*,
   Index No. 653316/2015, 2016 WL 7158077 (N.Y. Sup. Ct. Dec. 8,
   2016) ..........................................................................................................36, 52

*In re Adelphia Commc'ns Corp.*,
   03-md-1529(LMM), 2005 WL 1026559 (S.D.N.Y. May 2, 2005).............11, 28

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   03-md-1529(LMM), 2005 WL 1404798 (S.D.N.Y. June 14, 2005)............20, 29

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
   11-cv-2232, 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ...............................21

*Am. Int'l Grp. v. Bank of Am. Corp.*,
   11-cv-6212, 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011) .........................14, 27

*AM Trust v. UBS AG*,
   78 F. Supp. 3d 977 (N.D. Cal. 2015)...........................................................34, 36

*In re Ames Dep't Stores, Inc.*,
   190 B.R. 157 (S.D.N.Y. 1995) .....................................................................11, 14

*In re Anchor Glass Container Corp.*,
   325 B.R. 892 (Bankr. M.D. Fla. 2005)..............................................................20

*Arch Trading Corp. v. Republic of Ecuador*,
   839 F.3d 193, 206 (2d Cir. 2016) ......................................................................55

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990) ..............................................................................31

*In re Banco Santander Securities-Optimal Litigation*,
   732 F. Supp. 2d 1305 (S.D. Fla. 2010)........................................................44, 51

*Bay Ridge Air Rights, Inc. v. New York*,
   44 N.Y.2d 49 (N.Y. 1978) ...........................................................................21, 23

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
    431 F. Supp. 2d 367 (S.D.N.Y. 2006) ...............................................................51

*Belcufine v. Aloe*,
    112 F.3d 633 (3d Cir. 1997) .............................................................................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    418 B.R. 75 (Bankr. S.D.N.Y. 2009)................................................................43

*In re Bernard L. Madoff Inv. Sec. LLC*,
    440 B.R. 274 (Bankr. S.D.N.Y. 2010)..............................................................43

*In re Bernard L. Madoff Inv. Secs. LLC*,
    721 F.3d 54 (2d Cir. 2013) ...............................................................................22

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239, 255 (2d Cir. 2007) .....................................................................55

*Blockbuster, Inc. v. Galeno*,
    472 F.3d 53 (2d Cir. 2006) .........................................................................12, 26

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).........................................................................................45

*Calder v. Jones*,
    465 U.S. 783 (1984).........................................................................................49

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
    368 F.3d 85 (2d Cir. 2004) ...............................................................................26

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) ......................................................................30, 33

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)..................................................................11, 23, 24, 25, 29

*Chaiken v. VV Pub. Corp.*,
    119 F.3d 1018 (2d Cir. 1997) ...........................................................................37

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014) ..............................................................42

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Chew v. Dietrich,*
143 F.3d 24 (2d Cir. 1998) ...................................................................38, 39

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.,*
14-cv-5216 (DLC), 2015 WL 4164763 (S.D.N.Y. July 10, 2015) ...................54

*Cromer Finance Ltd. v. Berger,*
137 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................................................41

*CutCo Indus., Inc. v. Naughton,*
806 F.2d 361 (2d Cir. 1986) .............................................................52

*In re Cuyahoga Equip. Corp.,*
980 F.2d 110 (2d Cir. 1992) .............................................................10

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2015) ...............................................7, 31, 32, 33, 34

*Del Ponte v. Universal City Dev. Partners, Ltd.,*
07-cv-2360 (KMK)(LMS), 2008 WL 169358 (S.D.N.Y. Jan. 16,
2008) .................................................................................38

*DiStefano v. Carozzi N. Am., Inc.,*
286 F.3d 81 (2d Cir. 2001) .............................................................31

*Dorfman v. Marriott Int'l Hotels, Inc.,*
99-cv-10496(CSH), 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002) ........................50

*In re Dow Corning,*
86 F.3d 482 (6th Cir. 1996) ............................................ 11, 13, 14, 20, 27, 29

*In re Enron Corp.,*
419 F.3d 115 (2d Cir. 2005) .............................................................19

*In re FairPoint Commc'ns, Inc.,*
452 B.R. 21 (S.D.N.Y. 2011) .............................................................24

*Giordano v. UBS, AG,*
134 F. Supp. 3d 697 (S.D.N.Y. 2015) ...................................................36

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Gisinger v. Patriarch*,
16-cv-1564(ER), 2016 WL 6083981 (S.D.N.Y. Oct. 18, 2016) ......................27

*In re Global Crossing, Ltd. Sec. Litig.*,
311 B.R. 345 (S.D.N.Y. 2003) ...................................................................14, 20

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) ..................................................................................37

*Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,
11-cv-420(RJF), 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) .........................31

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) .....................................................30, 31, 32, 34, 35

*Gulf Ins. Co. v. Caldor Corp.*,
03-cv-2894, 2006 WL 1586571 (S.D.N.Y. June 9, 2006)................................35

*Hanson v. Denckla*,
357 U.S. 235 (1958).........................................................................................46

*Hearst Corp. v. Goldberger*,
96-cv-3620(PKL)(AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) ...............52

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)........................................................................................31

*In re Hellas Telecommunications (Luxembourg) II SCA*,
524 B.R. 488 (Bankr. S.D.N.Y.).........................................................................36

*Hill v. HSBC Bank plc*, 14-cv-09745(LTS) .....................................44, 45, 51, 54, 55

*IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP* (*In re Amanat*),
338 B.R. 574 (Bankr. S.D.N.Y. 2005)...............................................................24

*Int'l Customs Assocs. v. Ford Motor Co.*,
893 F. Supp. 1251 (S.D.N.Y. 1995) ................................................................54

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945).........................................................................................30

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Jesup, Josepthal & Co. v. Piguet & Cie,*
　90-cv-6544, 1991 WL 168053 (S.D.N.Y. Aug. 22, 1991) ..........................41, 42

*Kaufman v. Cohen,*
　760 N.Y.S.2d 157 (1st Dep't 2003) ....................................................................13

*Kernan v. Kurz-Hastings, Inc.,*
　175 F.3d 236 (2d Cir. 1999) ..............................................................................38

*Kovaco v. Rockbestos-Surprenant Cable Corp.,*
　834 F.3d 128 (2d Cir. 2016) ................................................................................2

*Krys v. Pigott,*
　749 F.3d 117 (2d Cir. 2014) ..............................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
　11-md-2262 (NRB), 2015 WL 6243526
　(S.D.N.Y. Oct. 20, 2015) ...........................................................34, 35, 36, 38, 44

*LiButti v. United States,*
　178 F.3d 114 (2d Cir. 1999) ........................................................................45, 46

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
　732 F.3d 161 (2d Cir. 2013) ....................................................................47, 48, 49

*In re Lyondell Chem. Co.,*
　543 B.R. 400 (Bankr. S.D.N.Y. 2016)..............................................................20

*M. Shanken Commc'ns, Inc. v. Cigar500.com,*
　07-cv-7371(JGK), 2008 WL 2696168 (S.D.N.Y. July 7, 2008) .................49, 50

*Mallon v. Walt Disney World Co.,*
　42 F. Supp. 2d 143 (D. Conn. 1998)..................................................................38

*Melnick v. Adelson-Melnick,*
　346 F. Supp. 2d 499 (S.D.N.Y. 2004) ..............................................................31

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.,*
　488 F.3d 112 (2d Cir. 2007) ........................................................................11, 12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Munsell v. LaBrasserie Molson Du Zuebec Limitee*,
618 F. Supp. 1383 (S.D.N.Y. 1985) ...........................................................52, 53

*N.Y. Commercial Bank v. Pullo*,
12-02052(BRL), 2013 WL 494050 (Bankr. S.D.N.Y. Feb. 7, 2013).................11

*In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*,
497 F. App'x 491 (6th Cir. 2012) ........................................................27

*Newbro v. Freed*,
337 F. Supp. 2d 428 (S.D.N.Y. 2004) ...............................................41

*Pacor v. Higgins*,
743 F.2d 984 (3d Cir. 1984) ...............................................................23

*Palmieri v. Estefan*,
793 F. Supp. 1182 (S.D.N.Y. 1992) ...................................................50

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
639 F.3d 572 (2d Cir. 2011) ...............................................................10

*Passmore v. Baylor Health Care Sys.*,
823 F.3d 292 (5th Cir. 2016) .............................................................13

*In re Petition of Germain*,
824 F.3d 258 (2d Cir. 2016) ..............................................................26

*In re Pettibone Corp.*,
162 B.R. 791 (Bankr. N.D. Ill. 1994) ...........................................19, 20

*Picard v. Maxam Absolute Return Fund, L.P.*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011)...........................................42, 43

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)...........................................................................18, 19

*In re PT-1 Commc'ns, Inc.*,
292 B.R. 482 (Bankr. E.D.N.Y. 2003) ...............................................19

*Reich v. Lopez*,
13-cv-5307(JPO), 2014 WL 4067179 (S.D.N.Y. Aug. 18, 2014)......................33

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*,
   97 F. Supp. 3d 536 (S.D.N.Y. 2015) ...................................................52

*Ruiz v. Griffin*,
   856 N.Y.S.2d 214 (2d Dep't 2008) ....................................................21

*Rush v. Savchuck*,
   444 U.S. 320 (1980) .............................................................................35

*Rushaid v. Pictet & Cie*,
   2016 WL 6837930 (N.Y. Nov. 22, 2016) ..........................................48

*Sargent v. Budget Rent-A-Car Corp.*,
   94-cv-9215(SHS), 1996 WL 413725 (S.D.N.Y. July 24, 1996) ........50

*Sealink Funding Ltd. v. Bear Stearns & Co.*,
   12-cv-1397(LTS)(HBP), 2012 WL 4794450 (S.D.N.Y. Oct. 9,
   2012) ....................................................................................................21

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*,
   08-01789, 2009 WL 458769 (Bankr. S.D.N.Y. Feb. 24, 2009) ....16, 22

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   476 B.R. 715 (S.D.N.Y. 2012) ...........................................................40

*Shannon v. Gen. Elec. Co.*,
   186 F.3d 186 (2d Cir. 1999) .................................................................2

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002) ...............................................................12

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014) ...............................................................33

*Swatch Grp. Mgmt. Servcs. Ltd. v. Bloomberg, L.P.*,
   756 F.3d 73 (2d Cir. 2014) ...................................................................1

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
   241 F.3d 135 (2d Cir. 2001) ...............................................................32

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) .............................................30, 32, 37, 49

*Warwick Admin. Grp. v. Avon Prods., Inc.*,
    820 F. Supp. 116 (S.D.N.Y. 1993) ....................................................21

*Winstar Holdings, LLC v. Blackstone Grp., L.P.*,
    07-cv-4634(GEL), 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007)....................27

*In re Wolverine Radio Co.*,
    930 F.2d 1132 (6th Cir. 1991) ....................................................11, 14

*In re WorldCom Secs. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003) ......................... 10, 11, 13, 14, 15, 17, 24, 28, 29

*Matter of Zale Corp.*,
    62 F.3d 746 (5th Cir. 1995) .............................................................13

**Statutes**

11 U.S.C. § 341(a) ..............................................................................16

11 U.S.C. § 502(b)(9)....................................................................17, 18

11 U.S.C. § 704(a)(5) ........................................................................28

11 U.S.C. § 726(a)(3)........................................................................17

15 U.S.C. § 78fff(e) ...........................................................................28

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 1332(a) ...........................................................................5

28 U.S.C. § 1334................................................................................5, 18

28 U.S.C. § 1334(b) ....................................................................1, 3, 10

28 U.S.C. § 1409 .................................................................................5

28 U.S.C. § 1452................................................................................6, 30

# TABLE OF AUTHORITIES
(continued)

Page(s)

28 U.S.C. § 1452(a) ................................................................10

N.Y. C.P.L.R. 301 ...................................................................33

N.Y. C.P.L.R. 302 ...................................................................33

N.Y. C.P.L.R. 302(a)(1) ..........................................................48

N.Y. C.P.L.R. 1401 ................................................................12

**Rules**

Fed. R. App. P. 3(c)(1)(B) ........................................................1

Fed. R. Bankr. P. 3002(c) ......................................................15

Fed. R. Bankr. P. 7004(f)..................................................30, 33

Fed. R. Bankr. P. 9006(b)(1)...................................................18

Fed. R. Civ. P. 12(b)(2)...........................................................31

This brief is submitted on behalf of Defendants-Appellees UBS AG, UBS (Luxembourg) S.A. ("UBSL"), UBS Fund Services (Luxembourg) S.A. ("UBSFSL"), and UBS Third Party Management Company S.A. ("UBSTPM") (collectively "UBS" or the "UBS Defendants") in opposition to the appeal of Plaintiff-Appellant SPV OSUS Ltd. ("SPV").

## **STATEMENT OF JURISDICTION**

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b). *See infra* Section I.

This Court has jurisdiction over this appeal from the district court's May 27, 2016 final judgment dismissing all claims. 28 U.S.C. § 1291. SPV filed its notice of appeal on June 24, 2016.

However, SPV failed to designate or describe the district court's March 31, 2015 order denying remand (the "Remand Order," SPA1-2) in its notice of appeal, thus depriving this Court of appellate jurisdiction over that issue.

"A notice of appeal must . . . designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). This requirement is "jurisdictional in nature." *Swatch Grp. Mgmt. Servcs. Ltd. v. Bloomberg, L.P.*, 756 F.3d 73, 93 (2d Cir. 2014) (internal quotation omitted). Courts "do not have the authority to waive the jurisdictional requirements of [Rule 3(c)(1)(B)], and [their] jurisdiction is

1

limited by the wording of the notice." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 135 (2d Cir. 2016) (internal quotations omitted).

SPV's notice of appeal was styled as an appeal from the judgments and orders entered on July 21, 2015; July 24, 2015; May 26, 2016; and May 27, 2016, which were described as judgments and orders "that dismissed all of Plaintiff's claims against all Defendants with prejudice." A2152. The Remand Order was entered on March 31, 2015, and a memorandum explaining the reasoning for the Remand Order was issued on July 1, 2015. SPA1–16.

By failing to cite or describe the Remand Order in its notice of appeal, SPV deprived this Court of appellate jurisdiction over that order. Although "interlocutory orders rendered in [a] case typically merge with the [final] judgment for purposes of appellate review," *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 192 (2d Cir. 1999), this general principle should not apply to a denial of remand that is wholly unrelated to the merits of the case, particularly where, as here, SPV did specify other interlocutory orders in its notice of appeal. *See Kovaco*, 834 F.3d at 134-35 (on an appeal from a final judgment, the Second Circuit held that it lacked appellate jurisdiction over a state law claim dismissed by an interlocutory order where the notice of appeal identified or described some of the claims dismissed by that order but did not identify or describe the state law claim).

## STATEMENT OF ISSUES

1.     Whether the district court properly denied remand to state court and retained subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).

2.     Whether the district court properly dismissed the claims against the UBS Defendants for lack of personal jurisdiction.

## STATEMENT OF THE CASE

Plaintiff-Appellant SPV is a Bahamian corporation that claims to be the assignee of Optimal Strategic US Equity Ltd. ("OSUS"), a customer of Bernard L. Madoff Investment Securities LLC ("BLMIS"), which lost money investing through BLMIS in the now-infamous Ponzi scheme orchestrated by BLMIS and its principal, Bernard L. Madoff ("Madoff").  A34.  Parroting allegations first made more than three years earlier by Irving H. Picard, as trustee for the consolidated liquidation of BLMIS and the estate of Madoff (the "Trustee"), SPV sought to hold UBS responsible for OSUS's losses, contending that UBS aided and abetted Madoff's Ponzi scheme.  A96–106.

UBS AG is a Swiss entity with its principal place of business in Switzerland. A668-69.  UBSL, UBSFSL, and UBSTPM were, at all relevant times, Luxembourg entities with their principal places of business in Luxembourg. A663–67, A670–71.  SPV alleges that UBS helped to create, promote, and manage two foreign "feeder funds" that invested in BLMIS:  Luxalpha SICAV

3

("Luxalpha"), an entity organized and located in Luxembourg, and Groupement Financier Ltd. ("Groupement"), an entity organized and located in the British Virgin Islands (together, the "Funds"). A61–64. According to SPV, the UBS Defendants were aware of certain "red flags" relating to Madoff's fraud, and by servicing the Funds, enabled the fraud. *See, e.g.*, A53–60. SPV does not allege that OSUS invested in the Funds, that it relied on or was aware of UBS's relationship with the Funds when it invested in BLMIS, or that the existence of the Funds caused it harm.

Madoff himself is not a party to this action, and is protected from suit by an ongoing bankruptcy proceeding. On April 13, 2009, an involuntary chapter 7 petition was filed against Madoff in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), captioned *In re Bernard L. Madoff*, No. 09-11893(BRL) (the "Madoff Bankruptcy Proceeding"). On June 9, 2009, before any meeting of creditors in the Madoff Bankruptcy Proceeding was scheduled and before any bar date was set, the Bankruptcy Court substantively consolidated the Madoff estate with a separate proceeding against BLMIS that was filed under the Securities Investor Protection Act ("SIPA"), *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 08-01789 (BRL) (the "BLMIS SIPA Proceeding"). A707–14 (the "Consolidation Order"). Under the Consolidation Order, the consolidated estate "shall be administered in accordance with SIPA and the Bankruptcy Code

4

under the jurisdiction of" the Bankruptcy Court, but "the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee[,] . . . [and] all powers, rights, claims and interests of the Madoff estate are expressly preserved . . . ." A711.

SPV initially filed suit against UBS in federal court on December 10, 2014, alleging the existence of diversity jurisdiction, A808 ¶ 10, but eventually voluntarily dismissed that action, A550. A day after filing its federal complaint, SPV filed a virtually identical complaint in the Supreme Court of the State of New York, County of New York (the "Complaint"). A30–116. Despite filing in state court, SPV continued to assert that "[t]his Court has subject-matter jurisdiction of this suit under 29 [*sic*] U.S.C. § 1332(a). The citizenship of the parties is completely diverse and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332(a)." A34 ¶ 10. SPV also alleged in its state court Complaint that "[v]enue in this district is proper based on 28 U.S.C. § 1409." A34 ¶ 11.[1]

On January 28, 2014, before any activity occurred in state court, Defendant UBS AG removed this action to federal court pursuant to 28 U.S.C. §§ 1334 and

---

[1] Section 1409 sets forth the proper venue for "proceedings arising under title 11 or arising in or related to cases under title 11."

1452.  A20–25.  SPV moved to remand, which the district court denied on March

31, 2015, concluding that this action could have a conceivable effect on the Madoff

estate.  SPA1–16.  The district court found that the UBS Defendants had a

"reasonable legal basis to assert a contribution claim against the bankrupt estate for

any liability arising from this action," SPA7, and that "the interconnected nature of

this action and the [Madoff] bankruptcy proceeding further supports the exercise of

'related to' jurisdiction," SPA8–9.  The court noted that, even if an applicable bar

date had passed, UBS "could seek leave of the Bankruptcy Court to file a late

proof of claim."  SPA9.  Moreover, although the Madoff estate did not then have

sufficient funds to pay UBS's potential contribution claims, the district court noted

that the Trustee continued "to recover substantial assets" and "aggressively

pursu[e] numerous other recoveries," such that it was "within the realm of

possibility that the UBS Defendants could receive a distribution."  SPA11.

   While the motion to remand was pending, the UBS Defendants moved to

dismiss, asserting several grounds for dismissal, including that:  (1) SPV's case

was barred by SLUSA because it was part of a "covered class action" that asserted

state law claims seeking damages for more than fifty people based on allegations

of fraud in connection with the purchase of covered securities; (2) SPV failed to

allege a *prima facie* case of personal jurisdiction over the UBS Defendants; (3)

SPV failed to plead that UBS had "actual knowledge" of Madoff's Ponzi scheme,

or that any conduct by UBS proximately caused SPV's alleged injuries, and failed to plead with particularity the underlying fraud that UBS was alleged to have aided and abetted; and (4) SPV's claims were time-barred because the conduct alleged by SPV occurred more than six years before it filed its complaint. A353–402.

On July 21, 2015, the district court dismissed all claims against UBS for lack of personal jurisdiction. SPA17–35. The court first held that UBS AG—a Swiss corporation located in Switzerland, which is the only UBS Defendant alleged to have any presence in the United States—was not subject to general jurisdiction in the forum because SPV failed to allege an "exceptional case" necessary for the exercise of general jurisdiction over a foreign corporation. SPA27–28 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2015)). Second, the court held that it did not have specific jurisdiction over any of the UBS Defendants because SPV's claims "do not arise[] out of or relate[] to the UBS Defendants' alleged contacts with New York, or any other conduct in which they allegedly engaged." SPA32 (internal quotation omitted). While the district court did not reach the remaining bases for dismissal asserted by the UBS Defendants, it noted that the jurisdictional defect upon which dismissal was based was "closely related to one aspect of the UBS Defendants' challenge to the sufficiency of the complaints, namely, failure to plausibly allege proximate causation." SPA33.

On September 4, 2015, the Access Defendants[2] moved for dismissal. A1727-62.  On May 26, 2016, the district court dismissed all claims against the Access Defendants, finding that SPV failed to allege the "substantial assistance" element of its aiding and abetting claims, which requires alleging "that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."  SPA54 (internal quotations and citation omitted).

The district court thus dismissed SPV's remaining claims and entered judgment on May 27, 2016.  SPV thereafter appealed.

## SUMMARY OF THE ARGUMENT

The district court properly denied remand and found that it had subject matter jurisdiction because this action could have a conceivable effect on the Madoff estate.  If SPV were to prevail on its claims against UBS, UBS would have a reasonable basis to assert contribution claims against the Madoff estate.  This is true notwithstanding the passage of the bar date set in the BLMIS SIPA Proceeding (the "SIPA Bar Date"), because that bar date may not apply to claims against the Madoff individual chapter 7 estate—and, even if it does, UBS can file a late proof

---

[2]  Defendants-Appellees AIA LLC, Access Partners (Suisse) S.A., Access Management Luxembourg S.A., Access Partners S.A. (Luxembourg), Patrick Littaye, Access International Advisors Ltd., and Theodore Dumbauld, and Defendants Access International Advisors Europe Limited, Claudine Magon De La Villehuchet, A.K.A. Claudine De La Villehuchet, Executrix, Individually, and Pierre Delandmeter.

of claim by showing excusable neglect based on its indisputable lack of notice of its potential contribution claims prior to the SIPA Bar Date. Although UBS's potential contribution claims appeared out-of-the-money at the time the motion to remand was adjudicated, the district court concluded that it was possible that UBS could receive a distribution; that factual determination was not clearly erroneous.

The district court also properly granted UBS's motion to dismiss for lack of personal jurisdiction. Under the Supreme Court's *Daimler* decision, UBS AG is not subject to general jurisdiction in the United States because it has its principal place of business and is incorporated in Switzerland, and because SPV failed to allege any exceptional circumstances establishing that UBS AG is "at home" in this forum. The district court also correctly concluded that none of the UBS Defendants is subject to specific personal jurisdiction because, first and foremost, OSUS's injuries do not arise out of or relate to any of the UBS Defendants' alleged contacts with the forum. Indeed, because SPV does not allege that OSUS was an investor in the Funds or a customer of UBS, that it relied on UBS's involvement with those Funds in deciding to invest in BLMIS or even was aware of such involvement, or that the creation of the Funds somehow harmed OSUS, there is no meaningful connection whatsoever between OSUS's injuries and the UBS Defendants' conduct, let alone their contacts with the forum. Moreover, even if the requisite connection were alleged, SPV fails to allege that any of the UBS

Defendants had contacts with the United States that would establish that they "purposefully availed" themselves of the forum.

## ARGUMENT

## I.    THE DISTRICT COURT PROPERLY DENIED REMAND.

### A.    Applicable Legal Standards.

UBS removed this action pursuant to 28 U.S.C. § 1452(a), which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334 provides the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

"For the purposes of removal jurisdiction, a civil proceeding is 'related to' a title 11 case if the action's 'outcome might have any "conceivable effect" on the bankrupt estate.'" *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)). An action has a "conceivable effect" if "'the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *In re WorldCom Secs. Litig.*, 293 B.R. 308, 317 (S.D.N.Y.

10

2003) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)), *aff'd sub nom.*, *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004).

Where, as here, "related to" jurisdiction is premised on potential contribution claims by defendants against a debtor, jurisdiction exists "where there is a 'reasonable' legal basis for the claim." *WorldCom*, 293 B.R. at 318.[3] "In other words, [the estate's] obligation need not be certain, as contingent outcomes can satisfy the 'conceivable effects' test, so long as there is the possibility of an effect on the estate." *N.Y. Commercial Bank v. Pullo*, 12-02052(BRL), 2013 WL 494050, at *3 (Bankr. S.D.N.Y. Feb. 7, 2013). Further, "[t]he existence of strong interconnections between [a] third-party action and [a] bankruptcy has been cited frequently by courts in concluding that the third-party litigation is related to the bankruptcy proceeding." *WorldCom*, 293 B.R. at 321 (citing *In re Dow Corning*, 86 F.3d 482, 492–94 (6th Cir. 1996), *In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir. 1991), and *In re Ames Dep't Stores, Inc.*, 190 B.R. 157, 161 (S.D.N.Y. 1995)).

---

[3] While doubts on a motion to remand for lack of subject matter jurisdiction must be resolved against removability, *see In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 488 F.3d 112, 124 (2d Cir. 2007), a removing party need only demonstrate a "reasonable basis" for the claim on which subject matter jurisdiction is premised, and need not prove the merits of that claim, *see, e.g.*, *In re Adelphia Commc'ns Corp.*, 03-md-1529(LMM), 2005 WL 1026559, at *5 (S.D.N.Y. May 2, 2005).

On appeal from the denial of a motion to remand for lack of subject matter jurisdiction, the district court's legal conclusions are reviewed *de novo* and its factual findings are reviewed for clear error. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).[4]

The district court properly held that UBS's potential contribution claims against Madoff could have a conceivable effect on the Madoff estate. Plaintiff's appeal of the Remand Order, to the extent that this Court has appellate jurisdiction to consider it,[5] must therefore fail.

## B. The UBS Defendants Have A Reasonable Basis Upon Which To Assert Contribution Claims.

As the district court recognized, "related to" jurisdiction exists in this case because the UBS Defendants have a reasonable legal basis upon which to assert contribution claims against the Madoff estate for any liability arising from this action, and those claims could have a "conceivable effect" on the estate. *See* SPA7–12. Under New York law, a contribution claim arises among "two or more persons who are subject to liability for damages for the same . . . injury to

---

[4] SPV states that "[d]enial of remand is reviewed *de novo*," SPV Br. 20, but the case cited by SPV in support states only that the appellate court "review[s] the district court's ***legal conclusions*** *de novo*." *MTBE*, 488 F.3d at 115 (emphasis added) (citations omitted).

[5] *See supra* pp. 1-2.

property." N.Y. C.P.L.R. 1401; *accord Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 242 (2d Cir. 2002).

All of SPV's theories of liability against UBS depend on proving primary torts committed by Madoff. *See, e.g.*, *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (under New York law, claim for aiding and abetting fraud requires showing the existence of a fraud); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003) (claim for aiding and abetting breach of fiduciary duty requires "a breach by a fiduciary of obligations to another"). SPV has alleged that UBS aided and abetted, or participated in, the Madoff fraud such that they are joint tortfeasors. A619-29; *see WorldCom*, 293 B.R. at 321 (finding a reasonable basis for contribution claims where a finding of liability against director and underwriter defendants was "entirely dependent" on the debtor's wrongful conduct).

Accordingly, if the UBS Defendants were found liable in this action, they would have a reasonable basis to assert contribution claims against the Madoff estate, such that "related to" jurisdiction exists. *Id.*; *accord Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 296 (5th Cir. 2016) (finding "related to" jurisdiction where, if plaintiffs prevailed on their tort claims, defendants "may have contribution or indemnity claims against" a debtor under state law, such that the outcome of the suit "could conceivably have an effect on [the debtor's] estate"); *Dow Corning*, 86 F.3d at 494 ("The potential for [the debtor's] being held liable to

13

the [defendants] in claims for contribution and indemnification . . . suffices to establish a conceivable impact on the estate in bankruptcy."); *Matter of Zale Corp.*, 62 F.3d 746, 755 n.24 (5th Cir. 1995) (collecting cases from Courts of Appeals holding that claims against third parties were related to bankruptcy cases because any liability would be shared by the estate and third party or could give rise to contribution claims against the debtor); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 11-cv-6212(BSJ), 2011 WL 6778473, at *3 (S.D.N.Y. Dec. 20, 2011) (potential contribution claims against bankrupt estate supported "related to" jurisdiction); *In re Global Crossing, Ltd. Sec. Litig.*, 311 B.R. 345, 347 (S.D.N.Y. 2003) ("[T]he possibility that litigation against [non-debtor] could lead to a claim against the [debtor] for contribution based on the wrongdoing of other [debtor] employees would certainly have a 'conceivable effect' on the bankrupt estate.").

As the district court found, jurisdiction also exists here because of the substantial degree of interconnectedness between this action and the consolidated bankruptcy proceeding. SPA8–9. Courts in this Circuit have frequently cited the degree of interconnectedness between a third-party action and a bankruptcy action in deciding whether the former is "related to" the latter. *See id.* (citing *WorldCom*, 293 B.R. at 321); *see also Dow Corning*, 86 F.3d at 492–94; *Wolverine Radio*, 930 F.2d at 1143; *Ames Dep't Stores*, 190 B.R. at 161. For instance, courts have found "related to" jurisdiction where a debtor, but for the automatic stay imposed by the

14

bankruptcy filing, would have been named as a defendant in the third-party action, and, even in his absence, the debtor's conduct would remain "at the heart of" the litigation. *See* SPA8 (citing *WorldCom*, 293 B.R. at 321). Here, Madoff and BLMIS would have been named as defendants but for the bankruptcy stay, and their conduct is inextricably "intertwined" with the allegations against the UBS Defendants, which are alleged to have aided and abetted, participated in, and facilitated Madoff's fraud. Indeed, SPV cannot prevail on its claims against the UBS Defendants absent proof of the primary liability of Madoff and BLMIS.

## 1. The SIPA Bar Date Does Not Preclude "Related To" Jurisdiction.

SPV argues that this action cannot have a conceivable effect on the consolidated bankruptcy proceeding because UBS did not file a proof of claim on or before July 2, 2009, the SIPA Bar Date. But it is unclear whether the SIPA Bar Date even applies to contribution claims against Madoff individually. *See* SPA7 n.2 (declining to "resolve the issue of whether [the SIPA Bar Date], which was entered in the SIPA Action, applies to claims against the Madoff estate because . . . this action has a 'conceivable effect' on the bankruptcy proceeding even if the bar date has passed").[6] Moreover, as the district court recognized, even if the SIPA

---

[6] No bar date was ever set in the Madoff Bankruptcy Proceeding. Although the Madoff chapter 7 bankruptcy estate was substantively consolidated with the BLMIS SIPA estate in June 2009, the Consolidation Order does not purport to

Bar Date applied, "defendants have at least a reasonable basis to seek leave to file a late proof claim on the ground of excusable neglect."  SPA9–10.

### a. The Excusable Neglect Standard Would Control UBS's Application To File A Late Proof Of Claim.

SPV incorrectly assumes that any application to file a late claim would be governed solely by the provisions of SIPA and case law applicable to stand-alone SIPA proceedings.  Under the clear terms of the Consolidation Order, the Bankruptcy Code continues to govern administration of the consolidated proceeding.  A711 ¶ 3 (consolidated Madoff-BLMIS estate "shall be administered in accordance with SIPA *and the Bankruptcy Code*" (emphasis added)).  The cases cited by SPV pertaining to the strict application of a SIPA bar date are inapposite, because each of those decisions arose in a stand-alone SIPA proceeding rather than a substantive consolidation of a chapter 7 bankruptcy case and SIPA proceeding.[7]

---

supersede the procedural requirements of a chapter 7 case.  To the contrary, it provides that the combined Madoff-BLMIS estate "shall be administered in accordance with SIPA *and the Bankruptcy Code*."  A711 ¶ 3 (emphasis added).  Under Fed. R. Bankr. P. 3002(c), the claim filing deadline in a chapter 7 case is "90 days after the first date set for the meeting of creditors called under § 341(a) of the Code," but a date for that meeting has never been set in the Madoff Bankruptcy Proceeding.  *See In re Madoff*, 09-11893 (Dkt. as of Jan. 6, 2017).

[7]  This includes SPV's reliance on *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, 08-01789(BRL), 2009 WL 458769 (Bankr. S.D.N.Y. Feb. 24, 2009), which was decided in the BLMIS SIPA Proceeding several months prior to entry of the Consolidation Order.

The potential contribution claims at issue here are UBS's claims against Madoff, the debtor in an individual bankruptcy proceeding.  The fact that the chapter 7 estate has been substantively consolidated with a separate SIPA proceeding cannot preemptively extinguish the rights of a creditor of that bankruptcy estate, nor does it import all of SIPA's provisions to govern claims against the chapter 7 debtor.[8]  Here, UBS's potential contribution claims against Madoff not only did not accrue, but could not even have been preliminarily asserted as contingent claims due to an indisputable lack of notice.  Particularly under these circumstances, it would be inappropriate to assume that the bankruptcy court would find UBS's claims time-barred based on the rules applicable to late-filed claims in a stand-alone SIPA proceeding.[9]

Thus, regardless of whether a bar date has been set, the provisions of the Bankruptcy Code control any application to file a late proof of claim against Madoff.  Section 502(b)(9) of the Bankruptcy Code permits the allowance of claims "to the extent tardily filed as permitted under . . . the Federal Rules of

---

[8]  SPV's claim that allowing UBS's contribution claims would allow UBS to "jump the line ahead of" other creditors is misguided.  Claims filed after the bar date are either subject to the same distributional priority as timely claims (where the bankruptcy court finds excusable neglect) or subordinated to timely claims (where the claims are held untimely).  *See* 11 U.S.C. § 726(a)(3).

[9]  The question of "[w]hether or not a claim ultimately will be disallowed 'is one for none other than the bankruptcy court.'"  *WorldCom*, 293 B.R. at 323 (quoting *Belcufine v. Aloe*, 112 F.3d 633, 637 (3d Cir. 1997)).

17

Bankruptcy Procedure." 11 U.S.C. § 502(b)(9). Accordingly, even assuming that the SIPA Bar Date were applicable to UBS's potential contribution claims, UBS could still seek leave from the Bankruptcy Court to file a late proof of claim pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), which allows the bankruptcy court to permit a late-filed claim, "for cause shown . . . at any time in its discretion," when the failure to file earlier "was the result of excusable neglect."

### b. UBS Has A Reasonable Basis For The Allowance Of Its Late-Filed Claims.

Under the excusable neglect standard, UBS has a reasonable basis for the allowance of its claims: namely, the indisputable fact that UBS was not on notice of its potential contribution claims as of the SIPA Bar Date. Thus, as the district court properly concluded, even if the SIPA Bar Date were deemed to apply to UBS's potential contribution claims against Madoff, this action is still "related to" the Madoff Bankruptcy Proceeding under Section 1334. SPA9 n.2. In reaching that conclusion, the district court found that the UBS Defendants "have at least a reasonable basis to seek leave to file a late proof [of] claim on the ground of excusable neglect." SPA9–10.

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), the Supreme Court endorsed a multi-factor test for determining whether a movant seeking leave to file a late proof of claim has demonstrated excusable neglect. The non-exhaustive list of factors includes "the danger of

18

prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* The most important factor is the movant's reason for delay, including whether it was within the reasonable control of the movant. *In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005).

Thus, for example, excusable neglect has been found where a claimant was unaware that it had a claim against the debtor until after the bar date had passed. *See In re PT-1 Commc'ns, Inc.*, 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003). The court's analysis in *In re Pettibone Corp.*, 162 B.R. 791 (Bankr. N.D. Ill. 1994), is instructive. There, the debtor was a defendant in a pre-petition products liability action. *Id.* at 796. TWA, the plaintiff's employer, was joined as a third-party defendant in the products liability action nearly five years after the bar date had expired in the debtor's case, and after being joined sought leave to file a late proof of claim and assert a contribution claim against the debtor. *Id.* at 798, 800, 807. Prior to its joinder, TWA's potential right of contribution from the debtor was incapable of either prediction or assertion. *Id.* at 807. The court permitted TWA to file a late proof of claim because the lack of notice and circumstances beyond the creditor's control demonstrated excusable neglect. *Id.* at 815.

19

The circumstances here closely parallel those in *Pettibone*. SPV did not file suit against UBS until December 2014, more than five years after the SIPA Bar Date. The UBS Defendants could not have known about their potential contribution claims against Madoff until SPV's claim was filed. Like TWA, the UBS Defendants may be permitted leave to file a late proof of claim due to circumstances beyond their control—namely, a lawsuit brought by a third party years after the bar date. *Id.; see also In re Lyondell Chem. Co.*, 543 B.R. 400, 404–05 (Bankr. S.D.N.Y. 2016) (finding excusable neglect and allowing late-filed amendment of a proof of claim where trustee of litigation trust lacked notice of the appointment of an executor); *In re Anchor Glass Container Corp.*, 325 B.R. 892, 894–95, 897 (Bankr. M.D. Fla. 2005) (permitting filing of late claim based on excusable neglect where the creditor was unaware that he had a claim until after the bar date).

SPV's assertion that a contribution claim cannot have a conceivable effect on a bankruptcy proceeding unless a proof of claim has already been filed, *see* SPV Br. 30, is incorrect. Courts have "related to" jurisdiction based on potential contribution claims even absent a filed proof of claim. *See, e.g.*, *Dow Corning*, 86 F.3d at 494 (finding "related to" jurisdiction where defendants asserted "that they intend to file claims for contribution and indemnification against" the debtor); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 03-md-1529(LMM), 2005 WL

20

1404798, at *1 (S.D.N.Y. June 14, 2005) (finding, without reference to whether proofs of claim were filed, that "the claims asserted by plaintiffs . . . could well lead to claims for contribution"); *Global Crossing*, 311 B.R. at 347 (same).

As before the district court, SPV relies exclusively on two inapposite cases in arguing that the passage of the SIPA Bar Date precludes a finding of "related to" jurisdiction. *See* SPV Br. 24–27 (citing *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC,* 11-cv-2232(NRB), 2011 WL 4965150, at *4 (S.D.N.Y. Oct. 19, 2011), and *Sealink Funding Ltd. v. Bear Stearns & Co.,* 12-cv-1397(LTS)(HBP), 2012 WL 4794450, at *3 (S.D.N.Y. Oct. 9, 2012)). The district court properly recognized that both *Allstate* and *Sealink* involved potential (but untimely) claims for contractual *indemnification*, which arise upon execution of the contract creating indemnification rights, rather than claims for *contribution*. SPA10 ("Critical to the court's holding in both cases was the fact that '[a]n indemnification right "arises at the time the indemnification agreement is executed."'"). In both cases, the defendant's failure to file a timely proof of claim was inexcusable because the indemnification claim had arisen well before the bar date. By contrast, a contribution claim "does not accrue until payment of the underlying liability has been made by the suing party." *Id.* (citing *Warwick Admin. Grp. v. Avon Prods., Inc.*, 820 F. Supp. 116, 124 (S.D.N.Y. 1993)); *accord Ruiz v. Griffin*, 856 N.Y.S.2d 214, 217 (2d Dep't 2008) (citing *Bay Ridge Air Rights, Inc. v. New York*, 44

21

N.Y.2d 49 (1978)).  While the *Allstate* and *Sealink* defendants were on notice of their claims upon execution of the contract and thus had an opportunity to file timely proofs of claim, UBS could not have asserted a claim for contribution against Madoff prior to the SIPA Bar Date because UBS neither had, nor had any reason to believe that it had, such a claim.

SPV's statement that "UBS could and should have filed a contingent, protective proof of claim against the BLMIS estate well before the bar date," SPV Br. 30, is baseless.  As the district court noted, SPV did not assert its claims against UBS until nearly five and a half years after the SIPA Bar Date.[10]  Given that no one with standing brought such claims at any time prior to December 2014, SPV cannot establish that UBS had reason to believe it might have contribution claims before the SIPA Bar Date.[11]

---

[10]  Even the Trustee's case against UBS was not filed until after the SIPA Bar Date had passed and, in any event, this Court concluded that the Trustee lacked standing to bring tort claims on behalf of BLMIS customers, *see In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54, 63, 66 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2895 (2014), such that no contribution claim ever arose.

[11]  SPV cites a decision from the BLMIS SIPA Proceeding (prior to entry of the Consolidation Order) in which certain BLMIS investors requested extension of the bar date based on potential future claims against the estate in the event that the Trustee successfully pursued avoidance actions against them.  *Sec. Investor Prot. Corp.*, 2009 WL 458769 at *2 n.1.  The court denied their application, stating that "[b]ar dates apply to creditors *who have reason to believe they have a claim*, even if the claim has not yet accrued."  *Id.* at *2 (emphasis added).  Unlike those investors, who had every reason to believe that fictitious profits

22

Moreover, common law contribution rights—unlike contractual indemnification rights—cannot be anticipated prior to the existence of litigation that would give rise to a contribution claim because there is nothing to alert a party to such a claim until the basis for it is actually asserted against that party. This is precisely why it is well-established under New York law that a contribution claim does not accrue until the time that a demand for payment is made. *See Bay Ridge Air Rights*, 44 N.Y.2d at 55 (rejecting the argument that a claim for contribution should accrue at the time of the underlying injury, because under that approach, "unless [the contribution claimant] is sued before the applicable [limitations] period, he may be unaware of any right he has against the [party from which contribution is sought]").

### 2. The Requirement Of Intervening Litigation Does Not Preclude "Related To" Jurisdiction.

Relying on Third Circuit case law, SPV argues that the need for separate proceedings before the UBS Defendants could recover on contribution claims against the Madoff estate makes such claims too far removed from the bankruptcy to relate to that proceeding. SPV Br. 26 (citing *Pacor v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984)). That is not the law in this Circuit.

---

they received might be subject to clawback, UBS had *no* reason to believe that it had any potential claims against Madoff until well after the SIPA Bar Date had passed.

While the Supreme Court in *Celotex*, 514 U.S. at 308 n.6, cited the "conceivable effect" test from *Pacor* with approval, it did not endorse or mention *Pacor*'s rule regarding intervening litigation. Rather, it emphasized the breadth of the bankruptcy statute's jurisdictional grant, agreeing with the Third Circuit's view that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Id.* at 308.

Following the Supreme Court's inclination toward a broader jurisdictional grant, courts in this Circuit have consistently rejected the Third Circuit's view that the necessity of intervening litigation means that an action cannot "conceivably effect" a bankruptcy estate, instead following the more flexible approaches of the Fourth, Fifth, and Sixth Circuits. *See In re FairPoint Commc'ns, Inc.*, 452 B.R. 21, 29–30 (S.D.N.Y. 2011) (concluding that "the Second Circuit, if directly confronted with the question, is more likely to decide that a bankruptcy court has 'related to' jurisdiction . . . if the bankruptcy estate may be obligated to indemnify or contribute to the losing party"); *WorldCom*, 293 B.R. at 319–20 (rejecting the Third Circuit position because "the *Pacor* standard and the more persuasive authority [from the S.D.N.Y. and the Fourth, Fifth, and Sixth Circuits] indicate that jurisdiction over a third-party action exists where a claim for indemnification or contribution arising from that litigation has a conceivable effect on a bankruptcy

24

proceeding"); *IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP* (*In re Amanat*), 338 B.R. 574, 580 n.5 (Bankr. S.D.N.Y. 2005) (noting that courts in the Second, Fourth, Fifth, and Sixth Circuits have declined to follow Third Circuit authority precluding "related to" jurisdiction where later litigation is necessary to determine the estate's indemnification liability).

As courts in this district and other Courts of Appeals have held, allowing a contingent, not-yet-asserted claim for contribution against the debtor to serve as a basis for "related to" jurisdiction is consistent with Congress's directive (as recognized by the Supreme Court), while a categorical approach finding jurisdiction absent in any case requiring intervening litigation is not. Where supported by a reasonable basis, a not-yet-filed claim can certainly have some "conceivable effect" on a bankruptcy estate, as it may "impact[] upon the handling and administration of the bankrupt estate." *WorldCom*, 293 B.R. at 317 (quoting *Celotex*, 514 U.S. at 308 n.6). Accordingly, SPV's argument that the need for additional litigation precludes jurisdiction must fail.

### C. The UBS Defendants Could Recover From The Madoff Estate.

#### 1. The District Court's Conclusion That The UBS Defendants Could Receive A Distribution Was Not Clearly Erroneous.

Citing a report and related letter from the SIPA Trustee, the district court recognized that, although at the time remand was sought the Madoff estate did "not have sufficient funds to pay recognized customer claims, which take priority over

25

claims for contribution, the estate continues to recover substantial assets, including almost $1 billion in 2014 alone." SPA11. The court also observed that "the Trustee is aggressively pursuing numerous other recoveries." *Id.* Based on these considerations, the district court concluded that "it is within the realm of possibility that the UBS Defendants could receive a distribution." *Id.*

This Court should not disturb that factual finding because it was not clearly erroneous. *See Blockbuster*, 472 F.3d at 56. SPV concedes that the district court was required to "make a 'largely factual determination' as to whether these claims may have a conceivable effect on the estate." SPV Br. 36 (quoting *Cal. Pub. Emps.' Ret. Sys. v. WorldCom*, 368 F.3d at 96); *see also id.* ("When the *facts* show that claims have no value and therefore no effect on the estate, there is no 'related to' jurisdiction." (emphasis added)).[12] "It is . . . well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint." *In re Petition of Germain*, 824 F.3d 258, 261 (2d Cir. 2016) (citation and internal quotations omitted). SPV fails to identify any basis for disturbing the district court's determination on this issue.

---

[12] In *WorldCom*, this Court characterized an argument that removal was improper because defendants' indemnification and contribution claims against the estate were worthless or nearly worthless as a "largely factual determination" and stated that it was "not convinced that the [appellants] have raised a 'question of law.'" 368 F.3d at 96.

Rather, the record demonstrates that the district court examined the available evidence—including evidence beyond the face of SPV's complaint—and made a factual determination that "it is within the realm of possibility that the UBS Defendants could receive a distribution." SPA11. This is all that is necessary to support "related to" jurisdiction. *See Winstar Holdings, LLC v. Blackstone Grp., L.P.*, 07-cv-4634(GEL), 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007) ("'Certainty, or even likelihood, is not required. Bankruptcy jurisdiction will exist so long as it is possible' that the proceeding may affect the debtor's rights or the administration of the estate." (quoting *Dow Corning*, 86 F.3d at 491)); *Am. Int'l Grp.*, 2011 WL 6778473 at *4 ("And '[h]owever unlikely it might be that there will be sufficient value in the estate to provide for actual distributions[,] . . . the prospect of an effect on distributions is conceivable and is . . . sufficient to render [the] adversary proceeding "related to" Debtors' bankruptcy proceedings.'" (citation omitted)); *Gisinger v. Patriarch*, 16-cv-1564(ER), 2016 WL 6083981, at *4 (S.D.N.Y. Oct. 18, 2016) (finding it "improper" for plaintiffs "to predict that no recovery will be possible for [an unsecured creditor constituency]" where the trustee was still examining potential sources of recovery); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 497 F. App'x 491, 499 (6th Cir. 2012) (rejecting plaintiffs' arguments that contribution and indemnification claims against the bankruptcy estate "would have such low priority as to render their practical effect

27

on the estate so negligible as to exclude them from 'related to' bankruptcy jurisdiction," because "[t]he potential for [defendant's] being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy"). Because SPV has not demonstrated that this determination was in error, much less "clearly erroneous," this Court should decline to revisit it.

### 2. The Estate's Incurrence Of Fees To Defend Against A Potential Contribution Claim Also Supports Jurisdiction.

The district court further held that, even if the UBS Defendants were "ultimately unable to recover, this action could still conceivably affect the administration of the bankruptcy estate" because the Trustee "is under a [statutory] duty to examine proofs of claim and object to those that are improper, 11 U.S.C. § 704(a)(5), and his fees and expenses in doing so are recoverable from the general estate, 15 U.S.C. § 78fff(e)." SPA11–12. The UBS Defendants' assertion of contribution claims against the estate would cause the Trustee to incur costs, thereby conceivably reducing the amount available to creditors. *Id.*

SPV argues that this aspect of the district court's reasoning renders the scope of "related to" jurisdiction limitless. SPV Br. 37. SPV is mistaken because courts in this Circuit will not accept any theoretical or speculative claim of a third-party defendant against a bankruptcy estate as a basis for "related to" jurisdiction. Rather, where "related to" jurisdiction is premised on potential indemnification or

28

contribution claims by non-debtors, courts require "a reasonable legal basis for a claim" against the estate. SPA7 (citing *WorldCom,* 293 B.R. at 318); *see also Adelphia*, 2005 WL 1026559, at *5.

Although the Supreme Court in *Celotex* agreed that "a bankruptcy court's 'related to' jurisdiction cannot be limitless," 514 U.S. 300 at 308, it also set forth a limitation, stating that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Id.* at 309 n.6. Jurisdiction exists here not because of the bare possibility that UBS might bring claims against the Madoff estate, but because SPV's claims provide a *reasonable* legal basis for UBS to bring contribution claims against the estate. *Cf. Dow Corning*, 86 F.3d at 494 ("Cognizant of the fact that 'related to' jurisdiction cannot be limitless[,] . . . we nevertheless believe the possibility of contribution or indemnification liability in this case is far from attenuated.").

### 3.    The Potential Reduction Of Estate Liabilities Also Supports Jurisdiction.

The district court also recognized that SPV's status as a creditor of the Madoff estate provides additional grounds to support "related to" jurisdiction because any recovery by SPV from UBS would potentially reduce the estate's liability to SPV. SPA12. The court followed other district courts in this Circuit in holding that "[s]uch an effect is sufficient to satisfy the 'conceivability' standard." *Id.* (citing *Adelphia*, 2005 WL 1404798, at *2 ("To the extent that plaintiffs are

29

successful against the defendants, plaintiffs' recovery will in all probability (and certainly conceivably) reduce the total of Adelphia's liabilities")); *WorldCom,* 293 B.R. at 323 ("The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding.").  In the unlikely event that SPV recovers on its meritless, time-barred claims against UBS, such recovery would reduce the consolidated estate's liability to SPV, providing another basis for "related to" jurisdiction.

## II.  THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS AGAINST UBS FOR LACK OF PERSONAL JURISDICTION.

### A.  Applicable Legal Standards.

Because this case was removed pursuant to 28 U.S.C. § 1452, the district court had personal jurisdiction over each UBS Defendant only to the extent allowed under the Constitution of the United States.  *See* Fed. R. Bankr. P. 7004(f); *In re Celotex Corp.*, 124 F.3d 619, 629–30 (4th Cir. 1997).  "Since *International Shoe Co. v. Washington*, the touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, . . . that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  "*International*

*Shoe* distinguished between two exercises of personal jurisdiction: general

jurisdiction and specific jurisdiction." *Waldman v. Palestine Liberation Org.*, 835

F.3d 317, 331 (2d Cir. 2016). General jurisdiction "permits a court to hear 'any

and all claims' against an entity," *Gucci*, 768 F.3d at 134 (quoting *Daimler*, 134 S.

Ct. at 755), whereas specific jurisdiction exists "only over issues that 'aris[e] out of

or relat[e] to the entity's contacts with the forum,'" *id.* (quoting *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

    The UBS Defendants moved for dismissal pursuant to Rule 12(b)(2) for lack

of personal jurisdiction. A353, A366. "When responding to [such a] motion, the

plaintiff bears the burden of establishing that the court has jurisdiction over [each]

defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)

(internal quotation marks and citation omitted). Accepting the plaintiff's

allegations as true, the plaintiff must make a *prima facie* showing that jurisdiction

exists. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir.

1990). Although ambiguities in the pleadings should be construed in the light most

favorable to the plaintiff, "resolving all doubts in the plaintiff's favor is not the

same as blindly crediting all allegations regardless of their factual support."

*Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004). In

addition, in reviewing a Rule 12(b)(2) motion, a court may consider documents

beyond the pleadings.  *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, 11-cv-420(RJF), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012).

The district court properly held that it could not exercise general or specific personal jurisdiction over any of the UBS Defendants.  SPA25–35.  "The standard of review applicable to district court decisions regarding personal jurisdiction is clear error for factual findings and *de novo* for legal conclusions."  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 151 (2d Cir. 2001).

### B.     UBS AG Is Not Subject To General Jurisdiction In The United States.

In *Daimler AG v. Bauman*, the Supreme Court significantly narrowed the circumstances in which a court may assert general jurisdiction over a foreign corporation.  Specifically, the *Daimler* Court held that a court may exercise general jurisdiction over a foreign defendant only when "that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State."  134 S. Ct. at 760–61 (internal alterations and citations omitted).  "*Daimler* analogized its 'at-home test' to that of an individual's domicile."  *Waldman*, 835 F.3d at 322.  Thus, aside from the rare "exceptional case," a corporation is "at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business."  *Gucci*, 768 F.3d at 135.

32

Other than those two "paradigm" jurisdictional bases, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. Indeed, "even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum," *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (internal citation omitted), because asserting general jurisdiction on that basis would be "unacceptably grasping." *Daimler*, 134 S. Ct. at 761.[13]

Without even addressing *Daimler*'s arduous standard, SPV argues that the district court incorrectly held that UBS AG was not subject to the court's general jurisdiction. But UBS AG's place of incorporation and principal place of business are in Switzerland, A669 ¶ 2, and SPV fails to allege an "exceptional case" sufficient to go beyond those two jurisdictional bases. Essentially, SPV asserts that UBS AG is subject to general jurisdiction in the United States simply because it operates branches and conducts business here. SPV Br. 55. This Court has

---

[13] SPV's reliance on N.Y. C.P.L.R. 301 (mischaracterized by SPV as New York's long-arm statute, which is C.P.L.R. 302) is misplaced, because that statute does not apply to a case removed pursuant to "related-to" bankruptcy jurisdiction. *See* Fed. R. Bankr. P. 7004(f); *Celotex*, 124 F.3d at 629–30. Even if it did apply, application of New York's "doing business" test in circumstances inconsistent with *Daimler* would be unconstitutional. *See, e.g.*, *Sonera Holding*, 750 F.3d at 224 n.2; *Reich v. Lopez*, 13-cv-5307(JPO), 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014).

already rejected an identical argument, however. In deciding whether the Bank of China, a global company with four branches in the United States, was subject to general jurisdiction under *Daimler*, this Court held that the branches' operations do not constitute contacts that are "so continuous and systematic as to render [the bank] essentially at home in the forum." *Gucci*, 768 F.3d at 135. Bank of China's operations in the United States formed "only a small portion of its worldwide business" and "'plainly d[id] not approach' the required level of contact" under *Daimler*. *Id.*

The contacts alleged regarding UBS AG in this case are no different than Bank of China's. The fact that UBS AG operates branches in the United States does not establish that it is "at home" here. Moreover, *Daimler* requires that in-forum contacts be "judged against the corporation's *national and global activities*," *Gucci*, 768 F.3d at 135 (emphasis added), but SPV offers nothing to show that UBS AG's alleged in-forum contacts are such a substantial portion of the company's global operations that UBS AG should be deemed to be "at home" here.

SPV's other allegations in support of general jurisdiction are equally unavailing. First, the fact that UBS AG's U.S. operations are federally regulated "amounts to saying that a foreign corporation is subject to general personal jurisdiction in the U.S. simply because U.S. operations are governed by U.S. law."

34

*AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015), *appeal filed* 15-15343 (Feb. 25, 2015). If that were the case, every foreign corporation operating in the United States would be subject to general jurisdiction. *Id.*; *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-md-2262(NRB), 2015 WL 6243526, at *26–27 (S.D.N.Y. Oct. 20, 2015) (licenses obtained from New York and representations to federal agencies that New York operations were "significant to the activities of a critical operation or core business line" were insufficient to establish general jurisdiction over foreign bank defendants), *on reargument on other grounds*, 11-md-2262(NRB), 2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016). Second, SPV's reference to the wealth-management unit of UBS improperly conflates the contacts of separate UBS entities with those of UBS AG. *See Rush v. Savchuck*, 444 U.S. 320, 331–32 (1980) (rejecting "attempt[] to attribute [one defendant's] contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts"). The "[w]ealth management services [of UBS] in the United States are provided by UBS Financial Services Inc.," not UBS AG. A1619. Finally, the fact that UBS AG did not raise a personal jurisdiction defense in the Trustee's case, at a time *before* the *Daimler* case was decided, has no relevance here. *See, e.g.*, *Gucci*, 768 F.3d at 135–36 (pre-*Daimler* submission to jurisdiction did not waive post-*Daimler* jurisdictional objection); *Gulf Ins. Co. v. Caldor Corp.*, 03-cv-2894(LLS), 2006 WL 1586571, at *4

(S.D.N.Y. June 9, 2006) (waiver of personal jurisdiction in prior action did not submit defendants to jurisdiction in separate action), *aff'd*, 273 F. App'x 90 (2d Cir. 2008).

The district court's holding is in accord with the rulings of several other post-*Daimler* decisions that have found UBS AG not subject to general jurisdiction in various U.S. courts. *See AM Trust*, 78 F. Supp. 3d at 985; *Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 707 (S.D.N.Y. 2015); *Ace Decade Holdings Ltd. v. UBS AG*, Index No. 653316/2015, 2016 WL 7158077, at *5 (N.Y. Sup. Ct. Dec. 8, 2016) (Dkt. 58). The only case cited by SPV in support of its argument—*In re Hellas Telecomms. (Luxembourg) II SCA*, 524 B.R. 488, 508 (Bankr. S.D.N.Y.), a case that did not involve UBS AG—provides no basis for departing from those decisions. *Hellas*, an apparent post-*Daimler* outlier that held that Deutsche Bank was subject to general jurisdiction in the United States, did not engage in the correct comparison of Deutsche Bank's U.S. activities to its aggregate global activities. *See In re LIBOR*, 2015 WL 4634541, at *27 (rejecting the analysis and conclusion in *Hellas*); *Ace Decade*, 2016 WL 7158077, at *5 (same). And, in any event, the holding in *Hellas* was based on a finding that Deutsche Bank's North American Regional Head Office was a "*critical hub* of [Deutsche Bank's] *core* banking operations," *Hellas*, 524 B.R. at 508 (emphasis added), a degree of presence in the United States not alleged by SPV.

36

The district court's holding that UBS AG is not subject to general jurisdiction in the United States should therefore be affirmed.

**C.      SPV Failed To Make A *Prima Facie* Showing Of Specific Jurisdiction Over Any Of The UBS Defendants.**

**1.      None Of OSUS's Injuries Arises Out Of The UBS Defendants' Limited Contacts With The Forum.**

The district court held that SPV failed to allege the necessary connection between the forum and its claims against UBS—a fundamental prerequisite to the exercise of jurisdiction over a defendant who is not generally "at home" in the forum.  Specific jurisdiction "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Waldman*, 835 F.3d at 331 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "The exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'"  *Id*. (quoting *Goodyear*, 564 U.S. at 923).  Thus, "[t]o establish the minimum contacts necessary to justify 'specific' jurisdiction, the [plaintiff] first must show that [its] claim arises out of or relates to [the defendant's] contacts with [the forum]."  *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997).

SPV fails to directly address the district court's primary basis for dismissal of SPV's claims against UBS, or to articulate any basis for reversing that ruling.

The district court correctly held that SPV's "claims do not 'arise[] out of or relate[] to' the UBS Defendants' alleged contacts with New York, or any other conduct in which they allegedly engaged." SPA32 (quoting *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999)). The district court applied this Circuit's "sliding scale" approach, articulated in *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998), to determine the required causal connection between a defendant's forum-related contacts and a plaintiff's claims. SPA30–32. In *Chew*, this Court explained that "[w]here the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts," and "[w]here the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial," personal jurisdiction may exist where the defendant's conduct in the forum is a "but for" cause of the plaintiff's injury. 143 F.3d at 29.[14]

Because the UBS Defendants are all "foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic

---

[14] District courts in this Circuit have regularly applied *Chew*'s sliding scale to determine whether the "arising out of" requirement for specific jurisdiction has been met. *See, e.g.*, *In re LIBOR*, 2015 WL 6243526, at *27–28; *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 09-cv-8862(GBD), 2013 WL 1286170, at *11–12 (S.D.N.Y. Mar. 28, 2013); *Del Ponte v. Universal City Dev. Partners, Ltd.*, 07-cv-2360(KMK)(LMS), 2008 WL 169358, at *9–10 (S.D.N.Y. Jan. 16, 2008); *Mallon v. Walt Disney World Co.*, 42 F. Supp. 2d 143, 146–47 (D. Conn. 1998).

or indirect contacts with the United States," the district court properly held that SPV was required to establish that OSUS's injury was proximately caused by the UBS Defendants' alleged contacts with the forum. SPA32; *see also Chew*, 143 F.3d at 29. Indeed, SPV alleged only a few insignificant contacts between UBSL and the United States, and *no* relevant contacts with respect to any of the other UBS Defendants. *See infra* pp. Section II.C.2. And the district court correctly held that SPV's claims failed "even to meet the minimal requirement of 'but for' causation," and in fact failed "to *allege any meaningful connection whatsoever* between defendants' conduct (much less their forum-directed conduct) and [OSUS's] injuries." SPA32–33 (emphasis added); *see also infra* pp. 40–45.

On appeal, SPV continues to rely on an attenuated theory of "relatedness" and fails to establish any causal nexus between the UBS Defendants' alleged contacts with the forum and OSUS's alleged injuries. SPV argues that "the UBS Defendants' contacts with the New York forum are largely related to those defendants' conduct connected with funds including Luxalpha and Groupement," SPV Br. 39–40, and that, "[b]y creating, servicing, and operating Luxalpha and Groupement and then funneling hundreds of millions of dollars through them to U.S.-based BLMIS, UBS enabled Madoff to perpetrate his fraud," *id.* at 42. While SPV repeats its theory that the Funds' investments in BLMIS provided additional capital to BLMIS—like any other investor in BLMIS (including OSUS)—and that

39

"UBS facilitated Madoff's fraud by attaching the UBS brand and reputation to Luxalpha and Groupement," SPV Br. 40–43, it makes no attempt to allege a plausible causal connection between UBS's few alleged contacts with the forum, on the one hand, and *OSUS's* purported losses caused by Madoff, on the other.

OSUS was not an investor in Luxalpha or Groupement and SPV does not allege that OSUS relied on UBS's involvement with the Funds in deciding to invest in BLMIS. Indeed, SPV does not even allege that OSUS *knew about* the Funds, or UBS's involvement with them, when it invested in BLMIS. In fact, in its supplemental allegations related to the Access Defendants, SPV made clear that OSUS began investing in BLMIS in 1997, well-before Groupement and Luxalpha were created in 2003 and 2004, respectively. *See* SPV Br. 67–69. Thus, SPV fails to allege that OSUS's injuries are the proximate or even but-for result of the UBS Defendants' involvement with the Funds, let alone their few alleged contacts with the United States made in the course of performing their duties to the Funds.[15] The

---

[15] In oral argument before the district court, SPV also argued that if UBS had disclosed its knowledge of the fraud before Madoff's arrest in 2008, then SPV could have redeemed its investments in BLMIS before the Ponzi scheme collapsed. SPA34. The district court rightly found that assertion insufficient to create the requisite connection, explaining: "Had the UBS Defendants announced to the world that Madoff was a fraud, it is highly unlikely that SPV would have been able to recover the full value of its investments. And even if it had, any funds in excess of the principal it invested would be subject to clawback by the trustee of Madoff's bankrupt estate." *Id.* (citing *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y.

alleged contacts by UBS are therefore insufficient to support a finding of personal jurisdiction over any of the UBS Defendants.

The cases cited by SPV merely underscore SPV's failure to address the core deficiency of its allegations. Although those cases may suggest that certain contacts are in some cases relevant to the personal jurisdiction analysis, SPV ignores that in each of the cases it cites, specific jurisdiction was predicated on a direct link between the plaintiff's injuries and the in-forum contacts alleged.

In *Newbro v. Freed*, for example, the plaintiff alleged that defendants were unjustly enriched when a New York broker fraudulently transferred money *from the plaintiff's account into the defendants' account* to conceal a fraud. 337 F. Supp. 2d 428, 432–33 (S.D.N.Y. 2004). That transfer was prompted by defendants' meetings and communications with the broker in New York, and "[t]o the extent that the [defendants] were unjustly enriched by [the New York broker's] conduct, their enrichment and [the plaintiff's] loss occurred solely from actions taken in New York." *Id.* at 434. In *Cromer Finance Ltd. v. Berger*, the plaintiffs were U.S. investors *in the fraudulently-managed fund for which defendants served as administrators*, and their losses resulted, in part, from the defendants' solicitation of U.S. investors and communications sent to those investors regarding

---

2012)). In any event, SPV has now abandoned that argument by failing to raise it in its opening brief.

the fund. 137 F. Supp. 2d 452, 461 n.3, 462, 474, 476–77 (S.D.N.Y. 2001).

Similarly, the plaintiff in *Jesup, Josepthal & Co. v. Piguet & Cie*, deposited stock

into the defendant's account in New York and relied on the defendant's assurances

that payment for that stock was forthcoming, but such payment was never made.

90-cv-6544(WK), 1991 WL 168053, at *2–3 (S.D.N.Y. Aug. 22, 1991).  Because

the plaintiff's losses occurred as a result of his transfer of stock to one of

defendant's New York-based accounts, it was "undisputed that the cause of action

. . . ar[ose] out of [the defendant's] alleged activities in [its] accounts." *Id.* at *2.

These cases have no application here, where SPV has not alleged that OSUS

invested in the Funds serviced by UBS, that OSUS's decision to invest in BLMIS

or subsequent losses had anything to do with UBS, or that its losses were somehow

connected to UBS's activities in the U.S.[16]

SPV also cites avoidance actions brought by the Madoff Trustee, which,

unlike here, involve the investment of the defendants' *own* assets into the forum

and a causal connection between those investments and the Trustee's fraudulent

transfer claims.  *See Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106,

117–18 (Bankr. S.D.N.Y. 2011) (subsequent transfers arose from defendant's

---

[16] *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 626 (S.D.N.Y. 2014), *aff'd*,
833 F.3d 74 (2d Cir. 2016), is also inapposite because, in that case, defendants'
fraudulent scheme that "proximately caused [plaintiff's] injury" included
several activities in New York.

transfers of its own assets directly into the forum, since "[w]ithout [defendant's] transferring assets to and from the United States, there could not be claims for subsequent transfers against it"); *In re Bernard L. Madoff Inv. Sec. LLC*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (fraudulent transfer claims were "inextricably related" to BLMIS's transfer of funds to defendants' own account); *In re Bernard L. Madoff Inv. Sec. LLC*, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) (fraudulent transfer claims arose out of defendants' multiple contacts with New York, without which "there could be no fraudulent transfer claim"). The Trustee's allegations in those cases are entirely distinguishable from the jurisdictional allegations asserted by SPV here.

On the other hand, district courts considering contacts similar to those alleged by SPV have repeatedly held that such contacts are too attenuated to warrant the exercise of personal jurisdiction. For example, in *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, foreign plaintiffs brought suit against the foreign company they engaged to manage their assets, some of its officers, and an American broker with whom (the plaintiffs alleged) the manager had conspired to defraud the plaintiffs. 2013 WL 1286170 at *1. The court rejected the argument that two of the officers, both located abroad, were subject to personal jurisdiction based on allegations that their trips to the United States and interactions with U.S. investors "fueled the fraud." The court held that the plaintiffs, which were foreign

funds and not aggrieved American investors, could not have been harmed by the defendants' solicitation of U.S. investors, and that the trips "did not '[give] rise to the episode-in-suit' because neither [defendant] made any fraudulent statement to the Funds on these trips—they spoke to U.S. investors." *Id.* at *11–12 (internal citation omitted). Likewise, in *In re LIBOR*, the court applied the sliding scale in *Chew* and found that the plaintiffs' claims did not arise out of or relate to defendant's LIBOR marketing activities in any given forum because the plaintiffs, who alleged that they were defrauded by a bank without having any relationship with that bank, would have relied on LIBOR regardless of whether any defendant dealt in LIBOR–based products or communicated information about LIBOR into the plaintiffs' state. 2015 WL 4634541, at *25.

Similarly, both *Hill v. HSBC Bank plc*, 14-cv-09745(LTS), 2016 WL 4926199, at *6 (S.D.N.Y. Sept. 15, 2016), and *In re Banco Santander Securities-Optimal Litigation*, 732 F. Supp. 2d 1305, 1322 (S.D. Fla. 2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840 (11th Cir. 2011), involved similar claims brought by investors in BLMIS against various foreign defendants who, like UBS, served as custodians, administrators, or other service providers to foreign feeder funds that invested in BLMIS. In both of those cases, claims against the service providers were dismissed because, *inter alia*, the plaintiffs' claims did not arise from any of the defendants' conduct in

New York and instead could have arisen only from their alleged failure to perform due diligence or identify red flags while performing services in the foreign countries in which they were located. *See Hill*, 2016 WL 4926199, at *6; *Banco Santander*, 732 F. Supp. 2d at 1324.[17]

There is no way the UBS Defendants could anticipate being haled into an American court for the claims asserted by SPV—the assignee of a foreign fund that had no interaction with UBS and that did not invest in Luxalpha or Groupement—based on their sporadic contacts with the United States. OSUS's alleged injuries were the result of *its* investment with BLMIS; they were not related to—and certainly were not the proximate result of—UBS's minimal contacts with the United States. Because OSUS's injuries do not arise out of or relate to UBS's contacts with the forum, the district court appropriately dismissed SPV's claims against UBS. That decision should be affirmed.

### 2. SPV Has Failed To Allege That Any Of The UBS Defendants Purposefully Availed Themselves Of The Forum.

A plaintiff must also establish that "'the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into

---

[17] The court in *Banco Santander* rejected personal jurisdiction despite allegations of a closer connection between the plaintiffs' injuries and the defendants' contacts than alleged here by SPV, as the plaintiffs in *Banco Santander* had invested in the funds serviced by the defendants. *Banco Santander*, 732 F. Supp. 2d at 1324.

45

court there.'" *LiButti v. United States*, 178 F.3d 114, 122 (2d Cir. 1999) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). In deciding whether a defendant should "reasonably anticipate" out-of-state litigation based on contacts with the forum, "'*it is essential in each case* that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus *invoking the benefits and protections of its laws*.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As the district court recognized, SPV alleged very few contacts between the UBS Defendants and the United States, and, in fact, SPV fails to allege *any* cognizable United States contacts with respect to most of the UBS Defendants. Even if SPV did not fail to plead the requisite connection between UBS's contacts and OSUS's injuries, therefore, SPV's claims were properly dismissed because the UBS Defendants did not "purposefully avail" themselves of the forum.

> **a.**     **SPV Has Not Alleged Any Relevant Contact Between UBS AG And The Forum.**

SPV asserts that specific jurisdiction over UBS AG is proper because it was the "sponsor" or "promoter" of Luxalpha, but alleges no conduct relating to that role that occurred in the United States. SPV Br. 53. In fact, SPV's complaint asserts that the purpose of UBS AG's role as sponsor/promoter was to help secure approval from the *Luxembourg* regulator so that Luxalpha could operate as "a specific type of *European* fund," which allowed Luxalpha to market itself

46

elsewhere *in Europe*.  A61.  SPV does not allege that UBS AG's role as sponsor/promoter of Luxalpha involved any activity in the United States, and therefore does not establish a basis for personal jurisdiction.

SPV's other allegations purporting to support specific jurisdiction over UBS AG are irrelevant because they largely relate to conduct by entities other than UBS AG, and, in any event, are actions alleged to have occurred entirely outside of the United States.  First, SPV points to its allegation that Fondvest AG—a distinct entity based *in Zurich*—declined requests from other distinct UBS entities to endorse a BLMIS feeder-fund.  A53–54 ¶¶ 79–81.  Second, SPV refers to its allegation that UBS AG, *in Switzerland*, declined a request from an investment firm located *in Dublin and Milan* to offer another BLMIS feeder-fund to UBS customers.  A55 ¶ 85.  Third, SPV cites an allegation regarding a comment made to a UBS AG employee located *in London*, and not directed to the United States.  SPV Br. 53–54; A56–57 ¶¶ 86, 88.  None of these allegations provides a basis for a U.S. court to exercise specific personal jurisdiction over UBS AG.

Finally, Luxalpha's use of UBS AG's Stamford, Connecticut-based branch to process redemptions does not "augment the bases for [specific] jurisdiction" over UBS AG.  SPV Br. 54.  As to UBS AG, SPV alleges nothing more than "mere maintenance" of the account, which is not sufficient "to support the constitutional exercise of personal jurisdiction."  *Licci ex rel. Licci v. Lebanese Canadian Bank,*

*SAL*, 732 F.3d 161, 171 (2d Cir. 2013). Transactions undertaken by Luxalpha, the

accountholder, for its own purposes cannot be imputed as jurisdictional contacts to

the bank maintaining that account, which does not "avail itself" of the benefits of

its accountholder's in-state transactions. SPV cites no support for its assertion that

a third party's use of an account at UBS AG's Stamford branch subjects UBS AG

to specific jurisdiction. SPV Br. 54. Moreover, the Stamford account is not

alleged to "have been used as an instrument to achieve the very wrong alleged."

*Licci*, 732 F.3d at 171. SPV does not assert that the existence or use of the

Stamford account somehow led to its alleged harm, or even allowed the Madoff

fraud to continue.[18]

---

[18] The New York Court of Appeals' recent decision in *Rushaid v. Pictet & Cie*, 2016 WL 6837930 (N.Y. Nov. 22, 2016), does not require a different result. That case interpreted the "arising from" prong of N.Y. C.P.L.R. 302(a)(1), which is not before this Court, and found that the exercise of specific jurisdiction related to the use of a foreign defendant's correspondent bank account in New York was appropriate where there was a much more significant connection between the use of the account and the plaintiff's claim. The plaintiff claimed that defendants used New York accounts to orchestrate a money laundering scheme to funnel bribes and kickbacks, causing injury to the plaintiff, and that without the use of the account "the money laundering could not proceed." *Id.* SPV does not allege such a connection between the Stamford account and the alleged harm OSUS suffered. Similarly, in *Licci*, a foreign defendant's use of a correspondent account in the United States was sufficient for personal jurisdiction where the plaintiff's claim sought "redress for the allegedly unlawful provision of banking services of which the wire transfers [were] a part" and involved "allegations of [defendant's] repeated, intentional execution of U.S.-dollar-denominated wire transfers on behalf of [the financial arm of Hizballah], in order to further Hizballah's terrorist goals," including

Because SPV has not alleged that UBS AG had any relevant contact with the United States whatsoever, its claims against UBS AG were properly dismissed.

### b. SPV Has Not Alleged Any Relevant Contact Between UBSTPM And The Forum.

SPV alleges only that UBSTPM—a Luxembourg entity—was listed on paper as Luxalpha's management company, but did not actually perform any management functions. SPV Br. 52; A64. In other words, SPV alleges that UBSTPM did not engage in *any* actual conduct that relates to its claims. *A fortiori*, there are no allegations that UBSTPM conducted any activity in the United States.

Nor can UBSTPM be "subject to jurisdiction because of acting as an agent for UBS SA." SPV Br. 52. According to SPV, UBSL's contacts with the United States can be imputed to UBSTPM because UBSL delegated management responsibilities for Luxalpha to UBSTPM in 2006. SPV Br. 52–53. That argument turns the agency relationship on its head. Although an agent's contacts can be, under some circumstances, attributed to the principal, the converse is not true. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their

---

funding of attacks that harmed plaintiffs. *Licci* 732 F.3d at 166, 171. SPV's claims pertain to UBS's alleged failure to notify it of "red flags" regarding BLMIS, and do not relate to the Stamford-based correspondent account. Thus, unlike in *Licci*, the correspondent account does not support jurisdiction because it is "not connected to the wrongs for which the plaintiff[] here seek[s] redress." *Waldman*, 835 F.3d at 342 (distinguishing *Licci*).

49

employer's activities there."); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 07-cv-7371(JGK), 2008 WL 2696168, at *7 (S.D.N.Y. July 7, 2008) (the jurisdictional activities of a principal cannot be imputed to an agent); *Sargent v. Budget Rent-A-Car Corp.*, 94-cv-9215(SHS), 1996 WL 413725, at *3 (S.D.N.Y. July 24, 1996) (agency principles "do[] not permit the acts of a principal to be imputed to a foreign agent to confer jurisdiction over the agent"). Even the cases cited by SPV make clear that SPV has its agency analysis backwards. *See Dorfman v. Marriott Int'l Hotels, Inc.*, 99-cv-10496(CSH), 2002 WL 14363, at *10 (S.D.N.Y. Jan. 3, 2002) ("[A] corporate parent may act as an agent for a foreign subsidiary, thereby subjecting *the latter* to jurisdiction in the forum *inhabited by the parent*." (emphasis added)); *Palmieri v. Estefan*, 793 F. Supp. 1182, 1190–92 (S.D.N.Y. 1992) (attributing agent's activities in New York to principal). Thus, even if SPV had established that UBSTPM was acting as an agent for UBSL—which it has not—it cannot impute the alleged U.S. contacts of UBSL to UBSTPM in order to establish personal jurisdiction over UBSTPM.

Because SPV has alleged no relevant contact by UBSTPM with the United States, its claims against UBSTPM were properly dismissed.

### c. UBSFSL's Alleged Contacts With The United States Do Not Amount To "Purposeful Availment."

SPV alleges conduct performed by UBSFSL almost entirely outside of the United States. The allegation that UBSFSL processed redemption and subscription

requests in *Luxembourg* from Luxalpha's *European* investors does not constitute minimum contacts—or any contacts at all, for that matter—with the United States. *Cf.* SPV Br. 49; A1376–77, A1464-66 (Luxalpha subscription form including statement that subscriber is not a "United States Person"). Likewise, the alleged functions that UBSFSL performed in connection with keeping the Funds' accounting—including calculating net asset value, keeping the register of shareholders, communicating with investors, and preparing financial statements— are not alleged to have been performed in or directed toward the United States. SPV Br. 49; A64.

Nor do UBSFSL's scant alleged communications with BLMIS and Access—undertaken in UBSFSL's capacity as agent for Luxalpha—constitute "purposeful availment." "These communications . . . were incidental consequences of fulfilling a foreign contract [between UBSFSL and the Funds] and are insufficient to 'project' the Foreign Defendants into New York." *Hill*, 2016 WL 4926199, at *4; *see also Banco Santander*, 732 F. Supp. 2d at 1322 ("[T]he HSBC Defendants' telephonic and correspondence contacts with New York, incidental to a contractual relationship between an Irish custodian and administrator and the Bahamian funds which they serviced," are not sufficient for the exercise of personal jurisdiction.); *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 388 (S.D.N.Y. 2006) (no personal jurisdiction when "the

clear majority of the performance under the [contract] occurred" outside of New

York); *Hearst Corp. v. Goldberger*, 96-cv-3620(PKL)(AJP), 1997 WL 97097, at

*12 (S.D.N.Y. Feb. 26, 1997) (communications "from outside New York to people

in New York are not sufficient to establish personal jurisdiction under . . . the due

process clause" (collecting similar cases)); *Ace Decade*, 2016 WL 7158077, at *6

(UBS AG's telephone calls and electronic communications into New York relating

to contract based outside of New York held insufficient for specific jurisdiction).

Moreover, Luxalpha's contacts with the forum cannot be imputed to

UBSFSL on the basis of an agency theory. Again, SPV has the agency

relationship in reverse. UBSFSL served as an *agent for Luxalpha*, acting as

administrator and performing limited functions *for the fund*, not vice versa. SPV

has not alleged that, by way of processing subscriptions and redemptions, filing

documents, or arranging an annual meeting, SPV Br. 51, UBSFSL exercised any

control over Luxalpha, *see CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d

Cir. 1986) ("some control is necessary to establish agency for jurisdictional

purposes"); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 542

(S.D.N.Y. 2015) ("control cannot be shown based merely upon a defendant's title

or position within the corporation, or upon conclusory allegations that the

defendant controls the corporation"), or that Luxalpha operates solely for the

benefit of UBSFSL, *see* SPV Br. 51 (quoting *Munsell v. LaBrasserie Molson Du*

52

*Zuebec Limitee*, 618 F. Supp. 1383, 1386 (S.D.N.Y. 1985) ("The standard for inferring an agency relationship is whether the affiliate present in New York is operating solely for the benefit of the out-of-state affiliate.")).

Because SPV has not alleged any significant contacts between UBSFSL and the forum, it has not alleged that UBSFSL has purposefully availed itself of the privileges of conducting business in the United States, and the district court's dismissal of SPV's claims against UBSFSL should be affirmed.

### d. UBSL's Alleged Contacts With The United States Do Not Amount To "Purposeful Availment."

SPV likewise fails to plead facts demonstrating that UBSL purposefully availed itself of any U.S. forum. SPV alleges, in essence, that UBSL communicated with and transmitted information and funds to and from BLMIS located in New York, in connection with its custodial duties to the Funds. SPV alleges a handful of contacts between UBSL and the United States, including that UBSL delivered to BLMIS in New York account opening documents for Luxalpha, communicated with BLMIS in connection with the performance of its duties to Luxalpha, contracted with BLMIS to serve as sub-custodian for Luxalpha, and facilitated the transfer of Luxalpha's funds to and from BLMIS.[19] SPV does

---

[19] SPV refers to other conduct in its brief that it does not allege occurred in the United States, such as: the execution of a board resolution to open an account for Luxalpha with BLMIS, *see* SPV Br. 44, service as prime bank to

not allege that any of the account opening documents or the sub-custodian

agreement were negotiated or executed by UBSL in the United States, *see Hill*,

2016 WL 4926199, at *4, and all of the communications cited by SPV were made

by mail or wire to or from UBSL personnel in Luxembourg, *see Int'l Customs*

*Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995) (contract

between Taiwanese and New York entities, and subsequent mail and wire

communications between the parties, insufficient for personal jurisdiction), *aff'd*,

201 F.3d 431 (2d Cir. 1999).[20] "Telephone calls and correspondence sent into New

York, by a non-domiciliary defendant who is outside New York, generally are

insufficient to establish personal jurisdiction." *Id.* Additionally, the alleged

---

Groupement, *id.* at 47, receipt of subscription funds for Groupement and transfer of those funds to the Bank of Bermuda, *id.*, receipt of account statements for Groupement from AIA Europe which UBSL used to maintain bookkeeping records, *id.*, and receipt of fees from Groupement and Luxalpha, *id.* at 48. As these actions are not alleged to have occurred in the United States, they have no jurisdictional relevance.

[20] Additionally, while a choice of law provision can be relevant to the personal jurisdiction analysis, it is not dispositive and cannot alone confer jurisdiction. *See, e.g.*, *Int'l Customs Assocs.*, 893 F. Supp. at 1260. Moreover, SPV cites no authority finding a choice of law clause to be relevant in a suit brought by an entity which was not a party to the contract containing the choice of law clause and which asserts a claim unrelated to that contract. *See Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, 14-cv-5216(DLC), 2015 WL 4164763, at *5 (S.D.N.Y. July 10, 2015) (choice-of-forum provision does not establish jurisdiction in action that does not arise under the agreement and where plaintiff is not a party or third-party beneficiary under the agreement).

54

"communications and payments were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' [UBSL] into New York." *Hill*, 2016 WL 4926199 at \*4.

Finally, the Stamford, Connecticut bank account used by UBSL for Luxalpha's redemptions is of no jurisdictional relevance, because SPV's allegations regarding the use of the account are too attenuated, as discussed above. *See supra* pp. 47-48.

The contacts cited by SPV are therefore insufficient to constitute purposeful availment by UBSL of the United States forum.[21]

### D.    The District Court's Dismissal Without Jurisdictional Discovery Was Not An Abuse Of Discretion.

SPV's argument that the district court erred in dismissing its claims against the UBS Defendants without granting jurisdictional discovery likewise fails. A district court's denial of a request for jurisdictional discovery is reviewed for abuse of discretion. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016). Where plaintiffs do not establish a *prima facie* case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007). As discussed above, SPV has failed to allege a *prima facie* case of

---

[21] Luxalpha's contacts with the forum cannot be imputed to UBSL for the same reasons they cannot be imputed to UBSFSL. *See supra* pp. 52-53.

personal jurisdiction over any of the UBS Defendants, even with the benefit of documents beyond the face of SPV's complaint. At oral argument, SPV was given an opportunity to demonstrate any possible argument that would demonstrate that OSUS's injuries arose out of any of UBS's alleged contacts. *See supra* n.14. The district court considered SPV's new allegations attempting to connect OSUS's injuries to any conduct by UBS, and properly concluded that even those allegations failed to establish a *prima facie* case of jurisdiction. SPA34–35. The district court therefore properly dismissed the case without granting jurisdictional discovery.

## <u>CONCLUSION</u>

For the forgoing reasons, the district court correctly found that it had subject matter jurisdiction over this action based on "related to" bankruptcy jurisdiction and that SPV failed to make a *prima facie* showing of personal jurisdiction over any of the UBS Defendants. Defendants-Appellees respectfully request that this Court affirm each of the orders of the district court.


Dated:  New York, New York
        January 6, 2017

GIBSON, DUNN & CRUTCHER LLP


By: <u>*/s/ Marshall R. King*</u>
    Marshall R. King
    Gabriel Herrmann

200 Park Avenue
New York, NY  10166–0193

Telephone:  212.351.4000
Facsimile:   212.351.4035

*Attorneys for Defendants-Appellees UBS AG, UBS (Luxembourg) S.A., UBS Fund Services (Luxembourg) S.A., and UBS Third Party Management Company S.A.*

57

## CERTIFICATE OF COMPLIANCE
## WITH TYPE–VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with Federal Rule of Appellate Procedure

32(a)(7)(B) and Local Rule 32.1(a)(4)(A) (as amended on November 30, 2016)

because it contains 13,967 words, as determined by the word–count function of

Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of

Appellate Procedure 32(f); and

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

*/s/ Marshall R. King*
Marshall R. King

58